# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GERZINE SPENCE, as next friend and parent of SM, a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 21 C 1151 |
| BOARD OF EDUCATION OF LOMBARD SCHOOL DISTRICT 44, a/k/a Lombard SD 44, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Lombard School District 44's (the "District") Motion to Dismiss Plaintiff Gerzine Spence's Complaint. For the following reasons, the Court grants the Motion in part.

## BACKGROUND

For the purposes of this Motion, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Spence's favor. *League of Women Voters of Chi. v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

Plaintiff Spence is the mother of SM, a minor and a former student at one of the District's elementary schools. SM was one of the few African American students at her

school.  A majority of the students at the school were White and Hispanic.  A majority of the school's teachers were also White.

SM alleges a multitude of racist acts by her classmates and school officials.  Beginning when SM was in fourth grade, Hispanic students on her school bus repeatedly called SM a Spanish racial slur that means "black woman" or "dark-skinned person."  SM pleaded for the students to stop, but they did not. She eventually became fed up and pretended to grab one of the students harassing her, though she says she did not touch the student.  After this incident, SM was called to the school principal's office.  The principal, Yesenia Vazquez, is Hispanic.  SM explained to Vazquez that the students were calling her a racial slur and that she begged for them to stop.  Vazquez dismissed the use of the racial slur and told SM to "push through it."

After meeting with SM, Vazquez called Spence and claimed to have a video of the incident that showed SM choking a student.  After Spence asked to see the video, Vazquez backtracked and said the video was not clear and did not actually show SM choking someone.  Vazquez also informed Spence that she told SM to "push though" being called racial slurs.  Spence and SM say that the District did not discipline any student for calling SM the racial slur.

In fifth grade, non-Black students began singing songs with the "n-word" to SM.  SM repeatedly objected to the songs to these classmates.  SM reported the classmates to one of her teachers, Mr. Melton, who is a White man.  Spence says that Melton did not investigate or discipline anyone for singing the songs.  Spence then complained

2

about the songs and Melton's inaction to the District and Vazquez. However, the District and Vazquez also did not investigate or discipline anyone.

Because the harassment continued, SM and another student wrote a note to one of the students tormenting her that said "stop saying bad words" and put it in their locker. SM admitted to writing the locker note, and Melton punished her by prohibiting SM from being in the section of the school where the locker was located. As a result, SM had to carry her personal belongings with her to a District-sponsored after school educational program. SM was also punished by being forced to miss recess.

SM asked Melton why he punished her for the locker note but did not punish anyone for using racial slurs. SM also accused Melton of being racist because she was subjected to more severe discipline than non-Black students. In response, Melton publicly intimidated SM during a classroom activity. The activity involved a student being singled-out while the other students took turns saying things they liked about the subject student. When it was SM's turn, SM says that Melton sarcastically commended SM for her "courage" to call him racist despite a list of factors which he felt showed he is not racist, including the fact that he has a Black friend.

After this incident, Melton continued to discipline SM more harshly than non-Black students by, for example, sending her into the hallway and remotely disabling SM's computer. Additionally, Spence says that she repeatedly requested access to a digital platform intended to be shared with parents to keep them informed of their child's assignments and progress, but he withheld granting access. SM says she

3

witnessed Melton deleting Spence's name from the platform while saying "Yup, she's gone."

SM was also subjected to racial harassment by her orchestra instructor, Ms. Drafta, a White woman. For example, Drafta questioned whether Spence was truthfully signing a parental instrument practice timesheet and accused Spence and SM of fabricating it. Additionally, SM says Drafta discouraged SM's education growth, asking questions like "are you sure you still want to play?"

The alleged results of these incidents of harassment are severe. During one after school orchestra practice, SM was so distraught and embarrassed that she hid in the bathroom for the duration of the practice. SM has also suffered distressed breathing, anxiety, and other emotional damage. Spence and SM repeatedly complained of the racism, but the District did nothing. Spence says that she and SM were therefore forced to move into a new school district.

Based on these events, Spence filed a six count Complaint alleging: (1) a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI") (Count I); (2) retaliation under Title VI (Count II); (3) a violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 (Count III); (4) a violation of the Illinois Civil Rights Act of 2003, 740 ILCS § 23/5 (Count IV); (5) retaliation under the Illinois Civil Rights Act ("ICRA") (Count V); and (6) state-law negligent supervision (Count VI).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

The District argues that Spence's claims must be dismissed "*in toto* and with prejudice." We address each Count in turn.

## I. Count I

To state a claim under Title VI, a plaintiff must allege that: (1) they were discriminated against on the grounds of race; and (2) the defendant is a recipient of federal funds. *Irving v. Pui Tak Center*, 2013 WL 2251757, at *2 (N.D. Ill. 2013). While "whether or not an entity receives federal funds is no longer the *sine qua non* of a Title VI action," *id.* at *5, a plaintiff still must identify the program or activity that receives the federal funds, *Shebley v. United Continental Holdings, Inc.*, 2020 WL 2836796, at *5 (N.D. Ill. 2020). Spence merely alleges that the District receives federal funds, without identifying the program or activity. "Conclusory allegations of such assistance are not enough to state a claim." *Id.*

We therefore dismiss Spence's Title VI claim without prejudice and with leave to amend. Spence can presumably identify the program or activity receiving federal funds, which is likely an educational program receiving Title I funds, and SM is presumably an intended beneficiary of such funds. *See id.* at *6 (a plaintiff must allege that they are an intended beneficiary of the federal funds to have Article III standing); *see also Afogho v. Illinois Cent. Sch. Dist. 104 Bd. of Educ.*, 421 F. Supp. 3d 585, 593 (S.D. Ill. 2019) (students are intended beneficiaries of federal school funding).

Additionally, we do not believe the District's remaining arguments make amendment futile. For example, the District broadly argues that it cannot be liable for its employees' actions. The District misses the standard, though. The District can be liable if an employee "who at a minimum has authority to institute corrective measures

had actual knowledge of and was deliberately indifferent to the discriminatory conduct of Defendants' employees." *Shebley v. United Cont'l Holdings, Inc.*, 2020 WL 2836796, at *6 (N.D. Ill. 2020) (cleaned up). Spence alleges just that—Vazquez, the school principal, had actual knowledge of the actions of her classmates, Melton, and Drafta, but refused to take any corrective measures, and, in fact, discriminated against SM herself.

The District also says that Count I should be dismissed to the extent it alleges a claim of a hostile educational environment. To state a claim for a hostile educational environment under Title VI, Spence must allege that the alleged harassment was "severe of pervasive enough to deprive [SM] of access to educational benefits." *Qualls v. Cunningham*, 183 Fed. App'x 564, 567 (7th Cir. 2006). Spence alleges that the racial harassment by SM's classmates and the school's staff was so severe that she had to pull SM from the school and move to a new district. Such allegations could lead to a successful hostile educational environment claim. *See N.K. v. St. Mary's Springs Academy of Fond Du Lac Wi., Inc.*, 965 F. Supp. 2d 1025, 1034 (E.D. Wis. 2013) (denying summary judgment on a hostile educational environment claim based on similar facts).

Accordingly, the motion is granted with respect to the federal funds argument. The motion is denied with respect to the remaining arguments.

## II. Count II

In Count II, Spence alleges retaliation in violation of Title VI. The District first argues that there is no cause of action for retaliation under Title VI. The District is incorrect. *See Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 889 (N.D. Ill. 2015) ("Every court to consider the question" since *Jackson v. Birmingham Bd. of Educ*, 554 U.S. 167 (2005) "has concluded that Title VI encompasses a claim for retaliation, because Title IX and Title VI are interpreted in parallel.").

The District next argues that Spence fails to allege a materially adverse educational action. To be "materially adverse," an action must be one that would "dissuade a reasonable person from engaging in protected activity." *Henry v. Milwaukee Cnty*, 539 F.3d 573, 586 (7th Cir. 2008). The actions, though, must be more than "petty slights or minor annoyances." *Id.*

The District focuses on SM having to sit out recess and having to take her belongings to an after-school program. The District says that these punishments are trivial because schools can punish students for misbehaving. Thus, the District concludes, "[t]he actions of which Plaintiff complains first are not 'adverse,' but are not 'materially adverse' as a matter of law." Dkt. # 8, pg. 6.

But the District conspicuously leaves out pertinent facts and the surrounding circumstances. SM wasn't just forced to miss recess and carry her books for misbehaving. Instead, SM complained about a highly offensive, dehumanizing racial slur being directed at her only to be further dehumanized by being banned from an entire

section of the school. Being treated as a second-class citizen by SM's classmates and school administration forced Spence and SM to move out of the District's boundaries. We believe that a reasonable person could certainly be dissuaded by this. The Motion to Dismiss Count II is therefore denied.

## III. Count III

In Count III, Spence alleges a claim of discrimination under the Fourteenth Amendment's Equal Protection Clause. To state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) they are a member of a protected class, (2) they are otherwise similarly situated to people outside the protected class, and (3) they were treated different from people outside the protected class. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). The Seventh Circuit has stressed the liberal pleading requirements for Equal Protection claims. *Id.*

Here, Spence alleges that SM, a Black student, was subjected to punishments for complaining about racial harassment, while non-Black students were never investigated or punished for their actions—like calling SM racial slurs. Such allegations are sufficient at this stage. Accordingly, the motion to dismiss Count III is denied.

## IV. Counts IV, V, and VI

Finally, the District argues that Spence's state law claims are barred by Section 2-201 of the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 ILCS § 10/2-201 (the "Tort Immunity Act"). Section 2-201 grants immunity to a governmental defendant if "(1) the employee held either a position involving the

9

determination of policy *or* a position involving the exercise of discretion and (2) the employee engaged in *both* the determination of policy *and* the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted." *Andrews v. Metro. Water Reclamation Dist. Of Greater Chi.*, 2019 IL 124283, ¶ 27 (emphasis in original). "Determining whether an act is discretionary should be made on a case-by-case basis depending on the particular facts and circumstances." *Id.* at ¶ 28. "[T]he public entity or employee asserting an immunity defense bears the burden of proving it is entitled to that immunity." *Id.* at ¶ 23.

This statutory immunity, though, is an affirmative defense, *see id.*, and the Seventh Circuit has cautioned against addressing affirmative defenses on a motion to dismiss, *see Gunn v. Continental Casualty Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("the appropriate vehicle for resolving an affirmative defense is a motion for judgment on the pleadings under Rule 12(c) [or motion for summary judgment], not a Rule 12(b)(6) motion" because it "is necessary to allocate correctly the burdens of pleading and proof"). The Court may only grant a motion to dismiss based on an affirmative defense if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

Here, the District argues, without authority, that the Tort Immunity Act applies to claims brought under the ICRA. But this conclusion is unclear. It is unsettled whether the Immunity Act "categorically excludes actions that do not sound in tort." *Society of American Bosnians and Herzegovinians v. City of Des Plaines*, 2017 WL

748528, at *14 (N.D. Ill 2017). And, as Judge Kennelly noted, "Allowing [a state government defendant] to avoid damages liability for alleged discrimination on the ground that it resulted from a discretionary policy decision within the meaning of section 2-201 of the Tort Immunity Act would appear to undermine the very purpose of ICRA." *Brown v. Cook Cty.*, 2018 WL 3122174, at *11 (N.D. Ill. 2018). Nevertheless, it is premature for the Court to determine whether the District has met it burden of establishing immunity for Spence's state law claims because that determination necessarily requires facts outside the complaint. *See Sterling v. Bd. of Educ. Of Evanston Twp. High School Dist. 202*, 2021 WL 809763, at *9 (N.D. Ill. 2021) (declining to apply immunity on a motion to dismiss because it is "a fact-specific inquiry" and "the Court needs more facts to make such a decision").

The District does not otherwise challenge the sufficiency of Spence's state law claims. The Motion to Dismiss Counts IV, V, and VI is therefore denied.

## CONCLUSION

For the reasons stated above, the District's Motion to Dismiss is granted in part. Count I is dismissed without prejudice. Spence is given 14 days to amend Count I. The Motion is denied for the remaining Counts. Status remains set for July 15, 2021, at 9:50 a.m. It is so ordered.

Dated: 07/14/2021

*/s/ Charles P. Kocoras*
Charles P. Kocoras
United States District Judge